(No. 15059.—Rule made absolute.)

THE PEOPLE ex rel. The Chicago Bar Association, Relator,
vs. WILLIAM H. FISH, Respondent.

*Opinion filed February 19, 1924—Rehearing denied April 2, 1924.*

DISBARMENT—*when an attorney will be disbarred.* An attorney employed as clerk in the probate court of Cook county and assigned to act as assistant to the judge, and who knowingly permits associates in his office to act for delinquent administrators who have no counsel and to collect fees for promised services in settling estates, which were never performed, receipts for the money being given in the name of another attorney without his knowledge or consent, will be disbarred even though he denies that he participated in the conspiracy, though he knew of it and did not inform the court of the disreputable practice.

INFORMATION to disbar.

JOHN LONG FOGLE, (MORSE IVES, EDWIN A. MUNGER, and GEORGE L. QUILICI, of counsel,) for relator.

LITSINGER, HEALY & REID, (LORIN C. COLLINS, of counsel,) for respondent.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

By leave of court an information was filed in the name of the People of the State of Illinois *ex rel.* The Chicago Bar Association, against William H. Fish, respondent, alleging that he was licensed by this court on December 14, 1910, to practice law, charging him with unprofessional and dishonorable conduct calculated to bring the courts of justice into disrepute and contempt, and praying that his name be stricken from the roll of attorneys.

The information alleged that for several years prior to 1922 the respondent was employed as clerk in the office of the probate court of Cook county and during a considerable part of said time was citation clerk; that his duties were to examine the files and records of the court, prepare lists

311—32

of estates which had not been closed within a year as required by statute or in which inventories or accounts had not been filed as required, and secure from the judge orders requiring such estates to be closed or inventories or accounts filed within a fixed time; to superintend the serving of notices to administrators, executors, guardians or conservators; to meet the people coming in in response to notices, answering their inquiries and informing them of steps necessary to obey the orders, and upon failure to comply with orders, to superintend the issuance and service of citations or rules to show cause, and that in the performance of such duties his work, part of the time, was as an assistant to the judge of the court. The charges were, in substance, that respondent fraudulently appropriated the title "Assistant Judge of the probate court of Cook county;" that he had cards and letter-heads printed and used a circular giving such information, with the statement that he was an attorney and counselor at law, with an office at room 650, county building, which was the room assigned to him for the performance of his duties in the court; that while so acting as clerk respondent entered into a conspiracy with George Cohen, an employee in his office, under pretense of performing legal services in complying with orders of the court, in response to notices sent out; that the object was to procure payments of money to respondent and the other conspirators under the pretense that respondent, as lawyer and assistant judge, would see to the performance of the duties cast upon said persons; that respondent and others engaged in the conspiracy fraudulently obtained sums of money from such persons who came to the office in response to notices and otherwise; that respondent used the name of a practicing lawyer in signing receipts for money for the purpose of concealing his fraudulent conduct; that on or about January 11, 1921, he fraudulently procured from Ellen Hamilton $35 on pretense that he would close the estate of Alexander Hamilton, of which she was ad-

ministratrix, and he failed to do anything in the matter of
said estate, and that on January 7, 1921, respondent and
Cohen procured from John C. Dozois, administrator of the
estate of his son, Charles Dozois, $25 to close the estate
and did nothing for Dozois. There was also a general
charge of many other instances of fraudulent conduct of
respondent of the same character.

The answer of respondent admitted that he was licensed
as an attorney and stated that he was employed as a rec-
ord writer and bond and attachment clerk in the office of
the clerk of the probate court; that he was appointed by
the clerk of the court as assistant to the judge and was
authorized by the judge to approve accounts and sign the
name of the judge thereto, and that he was assigned to
room 650, county building, and acted as assistant to the
judge and was official head of the delinquent branch of
the court. The answer denied every allegation and charge
of a conspiracy and alleged that respondent refused to en-
ter into a conspiracy with Cohen or any other person, al-
though solicited by Cohen on numerous occasions to do so.
He admitted that he used the name of the attorney men-
tioned in the information in signing receipts, and in reply
to the specific charges admitted that he procured from
Ellen Hamilton $35 on the promise that he would close
the estate of which she was administratrix and only ad-
vised her as an assistant to the judge; he denied that he
procured from John Dozois $25 and alleged that Dozois
gave Cohen $25, for which Cohen promised to close the
estate, and respondent's name on the check was either a
forgery or obtained to convert the same into cash.

The issues were referred to Walter S. Holden, master
in chancery of the superior court of Cook county, as com-
missioner, to take the evidence and report the same to the
court, with his conclusions. The commissioner took the
evidence and returned the same with his findings of fact.
He found that for several years prior to March 22, 1922,

respondent held a position in the office of the clerk of the ·
probate court, first as record writer and afterward as bond
clerk, and in the summer of 1920 was authorized by the
clerk to act as assistant to the judge in the absence of the
regular assistant; that the judge authorized him to use his
name in approving accounts and he performed the duties
of an assistant; that he occupied room 650, county build-
ing, bearing the words "Assistant to the Judge" by author-
ity of the clerk; that as bond clerk he was head of the
citation and attachment department, and had with him, as
assistants, George Cohen and William Lass; that the duties
of these three were to look after delinquent administra-
tors, executors, guardians and conservators, to examine the
dockets, send out notices to delinquents, secure orders on
such parties, superintend the serving of notices and orders,
meet parties coming in in response to such notices and cita-
tions, answer their inquiries, and on failure to comply with
the orders submit the same to the court and superintend
the issuance and service of citations and attachments; that
it frequently happened that parties brought into court in
response to notices, orders and citations were without an
attorney to represent them; that shortly after respondent
became bond clerk he entered into an arrangement with
Cohen and Lass by which the latter were to refer such par-
ties, where possible, to respondent, who was to act as their
lawyer and divide the fees with Cohen and Lass; that this
agreement was carried out for a considerable time and fees
were taken and divided by the three parties to the agree-
ment; that to avoid detection, receipts for money paid were
signed by respondent, or Cohen acting under his instruc-
tions, in the name of Thomas E. Swanson, a lawyer with
whom respondent had formerly occupied an office but who
was not a party to the agreement and knew nothing of the
use of his name.

It was proved, and not denied, that there was a prac-
tice in the office occupied by respondent to solicit persons

who came there in response to notices and citations, to pay money for services in closing estates or complying with orders of the court; that moneys were procured by such solicitations and the promised services were not performed; that the name "Thomas E. Swanson," a reputable attorney, was used to conceal the actual nature of the transactions, and respondent participated in them to the extent of signing receipts or indorsing checks. Respondent by his answer practically admitted knowledge of the practice, and by his testimony also shows that he knew what was being done, and that Cohen urged him time and again to join in it, which he declined to do. It was a most disgraceful and illegal course of conduct, and if respondent had nothing to do with it he did not make it known to the judge, as it was his duty to do. Such a practice would not be permitted for an instant by the judge, and it came to an end as soon as he learned of it.

The disputed question of fact was whether respondent was a party to the arrangement and practice and a beneficiary of it, and the commissioner recites the testimony from which his conclusion was drawn. The principal witnesses on that question were Cohen and respondent. Cohen testified that the agreement was made; that there were upwards of fifty estates in which payments were made; that at periods of about two weeks respondent would divide with the witness and Lass, giving his check for their shares; that receipts were given to parties paying money by respondent, or the witness at his direction, in the name of Thomas E.. Swanson, and when the witness gave such receipts he signed them in that name and nearly always added his own initials. Respondent testified that he was not a party to any such agreement; that Cohen was doing the things alleged and urged him frequently to join him, which he declined to do; that he never signed the name of Thomas E. Swanson to any receipt; that none of the receipts bearing that signature were in his handwriting and the whole affair

was an attempt of Cohen to injure him. The commissioner states that Cohen's attitude and animosity toward respondent was evident, and the commissioner was not impressed with his credibility, from willingness to exaggerate and failure to remember the names of the numerous estates except three. As to respondent, the commissioner found that his testimony was contradictory, irreconcilable and incredible in some respects and that he testified falsely in respect to signing receipts. The commissioner concluded that if the case was to be determined from the evidence of Cohen and respondent he would not hesitate to report that the charge was not proved, but Cohen's testimony as to the existence of the agreement and the manner in which it was carried out was supported by the testimony of witnesses, the receipts and the testimony of a handwriting expert. Lass was a witness and the commissioner found him quite reluctant. He testified that respondent said he had permission to practice and would take care of the estates and of the witness and Cohen; that when a man came in and said he had no attorney witness would send him to Cohen and Cohen would recommend him to respondent and they would take care of matters and close the estates; that respondent never gave him any money, but he got about $10 from Cohen, paid by respondent's check.

The evidence relating to the three specific instances was as follows: John C. Dozois was administrator of the estate of his son, Charles Dozois, who died as a result of an accident while employed by the Florsheim Shoe Company. A claim was made to the Industrial Commission and $3500 was awarded to Dozois and wife. There were no other assets of the estate, and Dozois received notice to file his final account and went to room 650, where he met Cohen. He there saw respondent, who said he would charge him $25 for closing the estate, referring him to Cohen as his clerk. The next day Dozois returned and asked Cohen to whom to make the check for the fee, and he understood Cohen

to say "Thomas E. Swaren," and the check was so made and delivered to Cohen. Cohen took the check into the room of respondent and returned with a receipt bearing the signature "Thos. E. Swanson." The check was in evidence and bore the indorsements "Thos. E. Swaren" and "Wm. H. Fish, 412 Ashland block." Respondent admitted indorsing his name and address on the check but denied writing the signature to the receipt. The expert testified that all of the handwriting was of the respondent. No services were performed, and by neglect Dozois was afterward sued by the bonding company and had to pay $50.08 and the estate is still unsettled.

Ellen Hamilton was administratrix of the estates of her daughter, Harriet, and her husband, Alexander Hamilton. She was called to the probate court to file accounts and saw Cohen, who referred her to respondent. She had had an attorney but he had died, removed or could not be located. Respondent told her he would charge her $35 for settling both estates, and she paid him $5 and took his receipt, signed "T. E. Swanson." She saw him write the receipt. The next day she returned and paid him $30 and took his receipt, signed "Wm. H. Fish." Respondent admitted the writing of the receipt for $30 but denied that any part of the receipt for $5 was in his handwriting, but after the expert had testified he admitted writing the receipt but denied that he signed it. He admitted in his testimony that Ellen Hamilton was his client, that he agreed to take her cases for $35 and received $30 from her but denied he received the $5. He testified that after he had drawn the receipt for $5 Cohen claimed that Mrs. Hamilton was his client, and he therefore turned the unsigned receipt over to Cohen. The receipt which he gave for the $30 was for "Bal. of fees in said Est." The estates were afterwards settled for Mrs. Hamilton by an assistant to the judge, who charged her nothing.

Three receipts were offered in evidence in the matter of the estate of Sallie Gordon. Each acknowledged receipt of $10 from William Gordon. The first was signed "Thos. E. Swanson," and the other two, "Swanson, per C." Gordon complained to the court and the judge called respondent before the court. Cohen and respondent were present, and Cohen said he received $30 and turned it over to respondent. The court ordered respondent to re-pay the $30 by two P. M. of that day or he would be in contempt of court. Respondent paid the money over as ordered, and testified that he paid it because he could not afford to be sent to jail, even if the judge had no jurisdiction, because he had filed as a candidate for judge of the probate court upon the republican ticket at a primary soon to be held. Thomas E. Swanson, a reputable attorney, knew nothing about the arrangement, the payment of money or the use of his name. The use of his signature was unquestionably for the purpose of concealing the fact that an unlawful and disgraceful arrangement, discreditable to everyone, was being carried on, and the use of that name and the former relations of the parties fastened the use of it on respondent. The statement that the judge would not heed him with reference to the Gordon payments and permit him to show the fact cannot be credited.

The court cannot be expected to believe that respondent, knowing of the disgraceful practice in his office, bringing discredit upon the court, would not have informed the judge if he was not a beneficiary. Well deserved condemnation of Cohen cannot obscure or overcome facts proved independent of his testimony.

The exceptions to the report of the commissioner are overruled and the report is approved. The rule is made absolute and the name of respondent will be stricken from the roll of attorneys of this court. *Rule made absolute.*